UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                       Case No. 14-80169-WRS
                                                            Chapter 13
MARIE SUE HARRELSON,

    Debtor

MARIE SUE HARRELSON,

    Plaintiff                                            Adv. Pro. No. 14-8012-WRS

v.

VANN A. SPRAY and DSSC INC.,

    Defendants

## MEMORANDUM OPINION

This adversary proceeding is before the Court on the Motion to Compel Arbitration and Stay Proceedings filed by Defendants Vann Spray and DSSC, Inc. (collectively, "Defendants"). (Doc. 52). Plaintiff Marie Sue Harrelson has filed claims against the Defendants alleging turnover of estate funds, avoidance of fraudulent conveyances, and violations of restrictions on debt relief agencies. (Doc. 30). For the reasons set forth below, the Defendants' motion is GRANTED in part and DENIED in part.

### I. FACTS & PROCEDURAL HISTORY

The following facts are taken from the amended complaint and the exhibits attached to the motion to compel arbitration. At this procedural posture, the Court assumes all facts pled in the amended complaint are true.

## A. The Parties

Defendant Vann A. Spray ("Spray") is a former Birmingham attorney who advertised debt settlement services under the moniker "Law Offices of Vann A. Spray."[1] Defendant DSSC, Inc. ("DSSC") is a California entity who provided support to Spray's law firm, but was not licensed to do business in Alabama. Spray used DSSC's California address and contact information for his debt settlement services, although Spray was not licensed to practice law in California. In essence, DSSC provided the purported debt settlement services, and Spray acted as DSSC's "front" in Alabama.

Plaintiff Marie Sue Harrelson ("Harrelson") owed four credit card debts totaling $19,633. She contacted the Law Offices of Vann A. Spray, and the Defendants sent a "field agent" to meet her at her house. Harrelson never went to Spray's law office or met with Spray. Harrelson entered a Limited Engagement Agreement ("Agreement") with Spray on February 1, 2013. (Doc. 52, Ex. A).

## B. The Agreement

The Agreement, which is 17 pages long,[2] provided that Harrelson would make 36 monthly payments of $381.15 directly to the Defendants instead of to her creditors. The Defendants would subtract numerous up-front fees and put the balance in a savings account.

---

[1] Spray was disbarred in December 2014 for numerous ethical violations, including "failure to diligently represent his client[,] . . . fail[ure] to file an appeal and fail[ure] to properly administer monies in trust." The Alabama Supreme Court also cited this adversary proceeding as an additional reason for Spray's disbarment, noting possible violations of Rules 1.1, 1.2, 1.3, 1.4, 1.5, 1.6, 1.15, 3.3, 4.1, 5.3, 5.4, 5.5, and 8.4 of the Alabama Rules of Professional Conduct. *Disciplinary Notices*, THE ALABAMA LAWYER, May 2015, at 203.

[2] The Defendants have only attached the final 10 pages of the Agreement to their motion.

2

Once sufficient savings had accumulated, the Defendants promised to contact Harrelson's creditors and offer to settle the debt for roughly 60% of what Harrelson owed.

The fees the Defendants charged Harrelson for their services under the Agreement were as follows:

| | |
|---|---|
| *Legal Fees*: | ($14.30 x 1 month) + ($205.92 x 3 months) + ($186.87 x 3 months) + ($195.00 x 11 months) = **$3,337.61** |
| *Engagement Fees*: | ($299.00 x 1 month) + ($50.00 x 6 months) = **$599.00** |
| *Service Fees*: | $49.00 x 36 months = **$1,764.00** |
| *Specialty Account Fees*: | ($18.85 x 1 month) + ($9.85 x 35 months) = **$363.60** |
| **Total Fees to be Charged:** | **$6,064.21.** |

(Doc. 52, Ex. A).[3] Also, because these fees were mostly front-loaded, Harrelson's accumulation of savings to settle her debts would start very slowly. All of Harrelson's first monthly payment would be applied to pay the Defendants' fees. The application of Harrelson's monthly payments after that would be as follows:

| | |
|---|---|
| Payments 2-4: | $314.77 to fees (83%), $66.38 to settlement savings (17%) |
| Payments 5-7: | $295.72 to fees (78%), $85.43 to settlement savings (22%) |
| Payments 8-18: | $253.85 to fees (67%), $127.30 to settlement savings (33%) |
| Payments 19-36: | $58.85 to fees (15%), $322.30 to settlement savings (85%) |

---

[3] The Agreement did not expressly state the total amount of fees that the Defendants would charge Harrelson. The Court has determined the amount by adding up the monthly fees listed on Schedule B of the Agreement, entitled "Payment Schedule." Given the layout of the Agreement and the Payment Schedule, it is doubtful that an unsophisticated client would understand the amount and nature of the fees she would be obligating herself to pay.

3

(Doc. 52, Ex. A). Thus, under the Agreement, the vast majority of Harrelson's payments for the first 18 months would be pocketed by the Defendants – long before they would provide any actual debt settlement services to Harrelson.

Pursuant to the Agreement, Harrelson also granted Spray a power of attorney and provided her bank account number to the Defendants to allow them to debit the monthly payments.[4] The monthly debits of $381.15 began in March 2013. Harrelson ceased payment of her credit cards.

### C. Bankruptcy and Adversary Proceeding

Capital One, one of Harrelson's creditors, sued Harrelson in Alabama state court in November 2013. Harrelson's debt to Capital One was one of the debts she planned to settle through the Agreement. Harrelson contacted the number, which was purportedly Spray's, that was listed in the Agreement and forwarded information concerning the lawsuit to the Defendants. Capital One obtained a default judgment against Harrelson in December 2013. The Defendants told Harrelson that they negotiated a settlement with another of her creditors, but in fact did not. Harrelson cancelled the Agreement in January 2014, having made ten monthly payments to the Defendants totaling $3,811.50. The Defendants refunded $143.00 to Harrelson, and retained the remaining $3,668.50 as non-refundable fees.[5]

---

[4] According to the amended complaint, Spray sent a letter advising Harrelson to move her money to an out-of-state or internet bank account to prevent creditors' ability to levy her accounts. Harrelson did not follow this advice.

[5] According to the Agreement's Payment Schedule, Harrelson should have saved $837.33 after ten payments. It is unclear if this discrepancy is due to a factual error on Harrelson's part or is due to another fee in the portion of the Agreement that was not disclosed to the Court. *Supra* note 2. At this procedural posture, the Court assumes Harrelson's alleged facts are correct.

Harrelson filed Chapter 13 bankruptcy on February 13, 2014. (Case No. 14-80169). Proofs of claim for all of the debts Harrelson hired the Defendants to settle were filed in her case. (Case No. 14-80169, Claims 3, 5, 6, and 10). Harrelson initiated this adversary proceeding against the Defendants on July 16, 2014.[6] (Doc. 1). The Court stayed proceedings while the Defendants moved the district court to withdraw the reference; that motion has since been denied. (Doc. 46).

In her amended complaint, Harrelson asserts three counts: turnover of property of the estate under 11 U.S.C. § 542, avoidance of fraudulent conveyances under 11 U.S.C. § 548, and violations of restrictions on debt relief agencies under 11 U.S.C. §§ 526-528. (Doc. 30). She seeks to certify a nationwide class for the debt relief agency count. The Defendants have moved to compel arbitration of these counts pursuant to an arbitration clause contained in the Agreement. (Doc. 52). The arbitration clause is as follows:

> In the event of any controversy, claim or dispute between the parties arising out of or relating to this agreement or the breach, termination, enforcement, interpretation, unconscionability or validity thereof, including the termination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in the county which the consumer resides, or the closest metropolitan county in accordance with the Laws of the State of AL for agreements to be made in and to be performed in AL. The parties agree, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA. The arbitrator shall be neutral and independent and shall comply with the AAA code of ethics. The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in

---

[6] In addition to the Defendants, Harrelson also sued Global Client Solutions, who allegedly administered her account with Spray and DSSC. Global Client Solutions has reached a settlement with Harrelson and is no longer a party to this suit. (Doc. 41).

5

> any court having jurisdiction over the parties. If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement. The parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding. The parties shall share the cost of arbitration, including attorneys' fees, equally. If the consumer's share of the cost is greater than $2,000.00 (Two-thousand dollars), the company will pay the consumers share of costs in excess of that amount. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award. Binding Arbitration means that both parties give up the right to a trial by jury. It also means that both parties give up the right to an appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator. This section and arbitration requirement shall survive any termination.

(Doc. 18, Ex. A) (grammatical errors in original). The Defendants argue that pursuant to the Federal Arbitration Act ("FAA") (9 U.S.C. §§ 1 *et seq.*), arbitration agreements are presumptively valid, and that this clause meets the FAA's requirements for enforceability. The Defendants also argue that there is no conflict between Harrelson's claims and arbitration in this case because the claims are non-core and the Defendants are third-party non-creditors. Harrelson responds that all of the claims are core and that arbitration would undermine the Court's authority to regulate conduct before it. (Doc. 54). The Court heard oral argument on the Defendants' motion on July 14, 2015.

6

## II. LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's General Order of Reference dated April 25, 1985.

### A. Federal Arbitration Act

Enacted in 1925, the Federal Arbitration Act provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration of an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added). This is "the primary substantive provision of the Act," and "reflect[s] both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract[.]" AT&T Mobility, LLC v. Conception, ___ U.S. ___, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms," id., "including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes,' and the rules under which that arbitration will be conducted." Am. Express Co. v. Italian Colors Restaurant, ___ U.S. ___, 133 S. Ct. 2304, 2309 (2013) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 683 (2010)) (emphasis and brackets in original, citation and quotation marks omitted). "That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden

7

by a contrary congressional command[.]" Id. (internal quotation marks omitted). The FAA is triggered if there is (1) a "written agreement calling for arbitration," and (2) a substantial nexus affecting interstate commerce. American Gen. Fin., Inc. v. Branch, 793 So. 2d 738, 745 (Ala. 2000). When interpreting an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989). The Court must enforce a motion to compel arbitration of arbitrable claims even when there are also non-arbitrable claims in the complaint. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985).

Harrelson does not dispute that the Agreement contains a written arbitration clause or that it has a substantial nexus to interstate commerce. Nor does she assert any contractual defenses to the arbitration clause. Instead, Harrelson argues that the Bankruptcy Code precludes application of the FAA to her claims. (Doc. 54).

### B. Preclusion of the Federal Arbitration Act in Bankruptcy

The Court must compel arbitration if there has been a "failure, neglect, or refusal" to comply with a valid arbitration agreement. 9 U.S.C. § 4. However, "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987). "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." Id. at 227. Congressional intent to preclude the FAA "will be deducible from the statute's text or legislative history, or from an

Case 14-08012    Doc 56    Filed 09/02/15    Entered 09/02/15 12:23:28    Desc Main
Document      Page 8 of 20

inherent conflict between arbitration and the statute's underlying purposes." Id. (internal quotation marks, brackets, and citation omitted).

Nothing in the Bankruptcy Code's text or legislative history evinces a congressional intent to displace the FAA. Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.), 479 F.3d 791, 796 (11th Cir. 2007). Therefore, there is no bankruptcy-based preclusion of the FAA unless "an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code." Id.

The existence of an inherent conflict between the FAA and the Bankruptcy Code hinges largely on whether the proceedings at issue are core or non-core. Id. "In general, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding." Id.; *but see* McCallan v. Hamm, 2012 WL 1392960 (M.D. Ala. Apr. 23, 2012) (denying motion to compel arbitration of non-core claims). "However, even if a proceeding is determined to be a core proceeding, the bankruptcy court must still analyze whether enforcing a valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." Elec. Mach. Enters., 479 F.3d at 796.

The Bankruptcy Code provides a non-exhaustive list of sixteen different types of core proceedings. *See* 11 U.S.C. § 157(b)(2). However, "[t]o the extent that the literal wording of some of the types of proceedings might conceivably seem to apply, it should be remembered that engrafted upon all of them is an overarching requirement that property of the estate under [11 U.S.C.] § 541 be involved." Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1348 (11th Cir. 1999).

As for proceedings that are not listed in 28 U.S.C. § 157(b)(2), a core proceeding is one that "'involves a right created by the federal bankruptcy law,'" such as a trustee's preference action, or "'one that would arise only in bankruptcy,'" such as allowance of a proof of claim or an objection to discharge. Id. (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). "'If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under [28 U.S.C. §] 157(c)(1) it is an "otherwise related" or non-core proceeding.'" Id. (quoting Wood, 825 F.2d at 97) (emphasis in original). "[T]he dependence of the merits of an action on state law . . . does not, in and of itself, mean that the action is non-core." Id. at 1349. "However, the administrative act of filing such a claim must be distinguished from the state-law right underlying the claim, which 'could be enforced in a state court proceeding absent the bankruptcy' and is non-core." Id. at 1350 (quoting Wood, 825 F.2d at 97).

### III. ANALYSIS

Harrelson invokes three causes of action: turnover of property of the estate, fraudulent conveyance, and violations of debt relief agency restrictions. Claims for turnover and for avoidance of a fraudulent conveyance are both expressly listed as core proceedings.[7] 28 U.S.C. §

---

[7] Although a fraudulent conveyance claim is a "core" proceeding under 28 U.S.C. § 157(b)(2), it is not a proceeding on which a bankruptcy court can always enter a final order; i.e., it is a "Stern claim" requiring Article III adjudication pursuant to Stern v. Marshall, 564 U.S. 2 (2010). See Executive Benefits Ins. Agency v. Arkison, ___ U.S. ___, 134 S. Ct. 2165, 2172 (2014) (assuming without deciding that a fraudulent conveyance claim is a Stern claim); cf.

10

157(b)(2)(E) & (H). However, "[t]he label a party attaches to a claim does not require the court to wear blinders as to that claim's true substance." McCallan, 2012 WL 1392960 at *5. The Defendants rely on McCallan to argue that the gravamen of Harrelson's amended complaint is nothing more than a claim for breach of contract – and therefore is non-core. The Defendants further argue that, because the proceeding is non-core, it is *per se* subject to arbitration; i.e., there is no inherent conflict between the Bankruptcy Code and the FAA in this case. Harrelson responds that the claims are all core proceedings and that an inherent conflict exists. She also notes that the motion to compel arbitration in McCallan was denied, and asserts that the same operative facts in that case are present here.

### A. The Turnover Claim

The Defendants' argument is correct regarding Harrelson's turnover claim. The gist of Harrelson's complaint is encompassed in the following allegation:

> The Defendants took the Plaintiff's money and failed to perform under the terms of the Agreement, failed to negotiate the settlement of the credit card debts, failed to prevent further collection efforts by the creditors, including lawsuits filed against the Plaintiff, and generally failed to perform under the terms of the Agreement.

(Doc. 30, ¶ 77). That is a quintessential allegation for breach of contract.

---

Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 36 (1989) (holding that a fraudulent conveyance claim conveys the right to a jury trial under the Seventh Amendment, regardless of whether the bankruptcy court can preside over it). However, Article III concerns are not applicable to a question of preclusion because preclusion is the consideration of Congress's intent to carve an exception to one federal statute with a different and conflicting federal statute. When considering whether the Bankruptcy Code precludes the FAA, the Court can take Congress's designation of fraudulent conveyance claims as "core" at face value.

"Turnover proceedings are not to be used to liquidate disputed contract claims." Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.), 913 F.2d 1575, 1579 (11th Cir. 1990). "Congress envisioned the turnover provision of [11 U.S.C. § 542] to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." Id. "To apply turnover principles to [a] dispute between [a creditor] and [debtor] would allow [the debtor] to recover monies under the Bankruptcy Code from disputed claims based strictly on state law. Certainly such procedure could not be sanctioned outside bankruptcy and there is no just reason why it should be sanctioned just because the entity seeking to collect disputed funds happens to be a debtor under the Bankruptcy Code." Id. (footnote and internal quotation marks omitted).

In this case, there appears to be a dispute as to whether Harrelson still has legal title to the fees she paid the Defendants.[8] Because Spray was an attorney purporting to provide legal services, Harrelson arguably paid that money in trust. If she did, Spray could not gain legal title to it until he performed services to earn that money, and the amended complaint alleges he never performed any services. However, the Agreement clearly contemplates that the fees would be non-refundable; i.e., Harrelson divested legal title when she paid them. Because Harrelson's turnover claim is substantively a breach of contract claim, it is non-core.

However, that does not end the inquiry. "*In general*, bankruptcy courts do not have the discretion to decline to enforce an arbitration agreement relating to a non-core proceeding."

---

[8] Harrelson did not specify in her amended complaint whether she is asserting a claim under § 542(a) (estate property held by non-custodian) or § 542(b) (debt owed to debtor). Given the facts, the Court infers that § 542(b) is more applicable.

12

Elec. Mach. Enters., 479 F.3d at 796 (emphasis added).  However, circumstances occasionally warrant a refusal to compel arbitration even as to non-core claims.  McCallan, a case on which both parties rely, is a notable example of such circumstances.

In McCallan, Prattville attorney Keith Nelms and his law firm, Allegro Law, acted as a front for a debt settlement organization known as Americorp, Inc., headed and masterminded by Tim McCallan.  McCallan, 2012 WL 1392960 at *1.  The relationship between Allegro and Americorp was similar to the alleged relationship between Spray and DSSC in this case – i.e., Nelms and Allegro acted as a front for Americorp, and they charged enormous up-front fees for debt settlement services that were not provided.  Id. at *1 n.4.  When the State of Alabama placed Allegro in receivership, Nelms and Allegro both filed Chapter 7 bankruptcy and Americorp filed a proof of claim for administrative services.[9]  Id. at *1-2.  The trustee then sued Americorp and McCallan for turnover and an accounting, among other claims, and Americorp and McCallan moved to compel arbitration.  Id.  This Court denied the motion, and McCallan appealed.

The district court concluded in McCallan that the trustee's turnover and accounting claims were substantively a claim for breach of contract and therefore non-core.  Id. at *5.  Acknowledging that no court of appeals has ever found an inherent conflict between the Bankruptcy Code and the FAA on a non-core claim, the McCallan court nevertheless determined that "the unique set of facts presented in th[e] case . . . compel[led] the Court to the conclusion that arbitration . . . would seriously disturb the objectives of the Chapter 7 bankruptcy."  Id.  The court explained that the "collusive nature of the McCallan and Allegro relationship, and the lack

---

[9] The undersigned was the bankruptcy judge assigned to the Allegro and Nelms bankruptcies.

13

of arms-length dealing" between them meant that a breach of contract claim would not have arisen but for the trustee's prosecution of it in the interests of Allegro's creditors – i.e., the proceeding would not have existed outside bankruptcy. Id. at *6. The McCallan court also noted that the adversary proceeding was the proverbial "tail that wag[ged] the dog" of the Allegro bankruptcy because the money siphoned from Allegro to Americorp constituted the "lion's share" of the claims in the bankruptcy. Id. In addition, the court was concerned arbitration would be inadequate to protect Allegro's creditors due to McCallan's contemptuous treatment of the bankruptcy court's orders and recalcitrant lack of cooperation in discovery. Id. at *7. The McCallan court noted that "[a]rbitrators simply lack the full complement of mechanisms designed to ensure a party's compliance in reaching a full and fair resolution of a dispute[.]" Id. Finally, the McCallan court reasoned that "forcing the consumer creditors . . . to arbitrate pursuant to the formative document of an alleged civil fraud conspiracy, the sole purpose of which was to defraud these very consumers, would be fundamentally unfair." Id.

The Court agrees with both the result and the reasoning of the district court in McCallan. However, McCallan is no help to Harrelson, despite the factual similarities to that case, because the parties' relative positions in the underlying bankruptcy were different. In McCallan, the middleman attorney filed bankruptcy, the mastermind of the scheme filed a proof of claim in his bankruptcy, and their victims were all creditors of the bankruptcy estate. Arbitration of McCallan would certainly have conflicted with the Allegro bankruptcy's purpose. Here, by contrast, the victim is the one who has filed bankruptcy, and the Defendants are not creditors and have not injected themselves into her bankruptcy. Harrelson could easily have brought a breach of contract claim in state court, and the outcome of this adversary proceeding will have relatively

14

Case 14-08012   Doc 56   Filed 09/02/15   Entered 09/02/15 12:23:28   Desc Main
Document      Page 14 of 20

little impact on her bankruptcy. Also, unlike in McCallan, the Defendants have not engaged in contemptuous or recalcitrant litigation conduct thus far that would undermine an arbitrator's ability to resolve the action. There is no inherent conflict here that mandates preclusion of the FAA. The "turnover" claim must be submitted to arbitration.

### B. The Fraudulent Conveyance Claim

The Defendants likewise argue that the fraudulent conveyance claim is a money damages claim for breach of contract. (Doc. 52, p. 13). A fraudulent conveyance under the Bankruptcy Code includes a transfer by the debtor, within two years prior to the bankruptcy, when the debtor was insolvent at the time of the transfer and "received less than reasonably equivalent value in exchange" for the transfer. 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I). As alleged in the amended complaint, the debits from Harrelson's bank account to the Defendants fit this description. Unlike the turnover claim, nothing in the allegations suggests that the fraudulent conveyance claim is anything other than what it purports to be. It is therefore a "core" proceeding. 28 U.S.C. § 157(b)(2)(H).

Even if a claim is found to constitute a core proceeding, it must still be arbitrated unless "enforcing [the] valid arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." Elec. Mach. Enters., 479 F.3d at 796. "This determination requires a particularized inquiry into the nature of the claim and the facts and specific bankruptcy." MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir. 2006). "The objectives of the Bankruptcy Code relevant to this inquiry include 'the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors

15

Case 14-08012    Doc 56    Filed 09/02/15    Entered 09/02/15 12:23:28    Desc Main
Document      Page 15 of 20

from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.'" Id. (quoting Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.), 118 F.3d 1056, 1069 (5th Cir. 1997)).

Though Harrelson's fraudulent conveyance claim is a core proceeding, arbitration of it will not seriously implicate bankruptcy's purposes. Admittedly, Harrelson's plan provision to pay her creditors any non-exempt proceeds recovered in this adversary proceeding fulfills one of bankruptcy's key purposes. (Case No. 14-80169, Doc. 20). However, the fraudulent conveyance claim is directly connected to the facts undergirding the turnover/contract claim. *See* Cardali v. Gentile (In re Cardali), 2010 WL 4791801, *8-9 (Bankr. S.D.N.Y. Nov. 18, 2010) (granting motion to compel arbitration of fraudulent conveyance claim that was nearly identical to an arbitrable non-core claim). They will rise or fall together. Protection of Harrelson's creditors will not be jeopardized by having the fraudulent conveyance claim decided through arbitration instead of litigation. Therefore, the fraudulent conveyance claim will be submitted to arbitration.

### C. Claim for Violations of Debt Relief Agency Restrictions

A claim asserting violations of debt relief agency restrictions is not specifically listed as a "core" proceeding under 28 U.S.C. § 157(b)(2). Nevertheless, it is a core proceeding because the right to disgorge fees of entities purporting to provide bankruptcy assistance is established by the Bankruptcy Code and is unique to bankruptcy. *See* 11 U.S.C. § 526(c); United States Lines, Inc. v. Am. Steamship Owners Mut. Protection & Indem. Assoc. (In re United States Lines, Inc.), 197 F.3d 631, 637 (2d Cir. 1999) ("Proceedings can be core by virtue of their nature if . . . the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings").

16

Additionally, the Court holds that arbitrating the claim for violations of debt relief agency restrictions would inherently conflict with multiple purposes of the Bankruptcy Code. "Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to correct perceived abuses of the bankruptcy system. Among the reform measures the Act implemented are a number of provisions that regulate the conduct of 'debt relief agencies' – *i.e.*, professionals who provide bankruptcy assistance to consumer debtors." Milavetz, Gallop, & Milavetz, P.A. v. United States, 559 U.S. 229, 231-32 (2010) (internal parenthetical and brackets omitted). "It is unlikely that Congress intended that the role of bankruptcy courts in enforcing 11 U.S.C. § 526 be overridden by private parties through prepetition contracts. Congress clearly contemplated the regulation of debt relief agencies . . . through the BAPCPA." Huffman v. Legal Helpers Debt Resolution, L.L.C. (In re Huffman), 486 B.R. 343, 363 (Bankr. S.D. Miss. 2013).

In Huffman, multiple debtors had entered a debt settlement scheme similar to that present in this case, and had been forced into bankruptcy as a result. Id. at 349-51. When the trustee initiated an adversary proceeding against the perpetrators of the debt settlement scheme, the defendants filed a motion to compel arbitration. Id. at 351-52. The Huffman court denied the motion as to the claim for violation of debt relief agency restrictions, concluding that arbitration of that claim would inherently conflict with the Bankruptcy Code. Id. at 364. The Huffman court was particularly concerned "that arbitrators on the roster of the American Arbitration Association ("AAA") need not be attorneys, much less attorneys experienced in bankruptcy law." Id. Notably, the AAA is the organization selected by the Agreement's arbitration clause. *Infra*, Part I, C.

17

The Court shares the concerns raised in Huffman about the possibility of a non-attorney being assigned to determine whether to enforce restrictions on the conduct of entities who provide legal services. A non-attorney lacks the ethical training and responsibility of an attorney (or a judge), and might not fully appreciate the obligations of those who offer legal services to the general public. These obligations extend beyond mere contractual duties. In this case they implicate statutory duties of conduct imposed by the Bankruptcy Code, ethical duties of conduct imposed by the Alabama Rules of Professional Conduct, and the Court's power to police the conduct of those who purport to provide legal services within its purview.

Another purpose of the Bankruptcy Code is to provide honest but unfortunate debtors a fresh start while minimizing the losses of creditors who are owed money. As noted earlier, Harrelson's plan provides to pay any non-exempt proceeds from this suit to her creditors. (Case No. 14-80169, Doc. 20). More importantly, the Defendants' scheme on a broad scale victimizes both debtors and creditors because it preys on at-risk debtors to siphon away money that would otherwise be used to pay creditors. Creditors do not get paid and debtors commit "personal economic suicide" through incurring late fees, increased interest, and ruined credit. McCallan, 2012 WL 1392960 at *1. That is exactly what happened here.

In light of the importance of these issues, the specialized knowledge that will be required to resolve them, and the predatory nature of the Defendants' scheme as alleged in Harrelson's amended complaint, the Court cannot allow this claim to be referred to arbitration. The Court will deny Defendants' motion to compel arbitration of the claim for violations of debt relief agency restrictions.

18

## IV. MOTION TO STAY PROCEEDINGS

In addition to moving the Court to compel arbitration of these claims, the Defendants have also moved to stay proceedings. "If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . , the court in which such suit is pending, upon being satisfied that the issue involved . . . is referable to arbitration . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Because Harrelson's turnover and fraudulent conveyance claims are referable to arbitration, the Defendants' motion to stay proceedings as to those claims is granted. However, the Defendants' motion to stay proceedings as to the claim for violations of debt relief agency restrictions is denied. *See* Benoay v. Prudential-Bache Sec., Inc., 805 F.2d 1437, 1441 (11th Cir. 1986) (reversing order to stay proceedings of non-arbitrable claim pending arbitration of other claims).

## V. CONCLUSION

A court must compel arbitration of all claims referable to arbitration if there has been a "failure, neglect, or refusal" to comply with a valid arbitration agreement. 9 U.S.C. § 4. In this case, Harrelson's turnover and fraudulent conveyance claims are referable to arbitration, while her claim for violations of debt relief agency restrictions is not. Therefore, the Court will GRANT the Defendants' motions to compel arbitration of Harrelson's turnover and fraudulent

conveyance claims and stay proceedings of those claims, and will DENY the Defendants' motions as to the claim for violations of debt relief agency restrictions.

Done this 2nd day of September, 2015.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Nicholas H. Wooten, Attorney for Plaintiff
   Wilson F. Green, Attorney for Defendants